Cynthia THOMPSON, Plaintiff–Appellant,

v.

HOLY FAMILY HOSPITAL, a division of Dominican Health Services, Defendant–Appellee.

No. 96–35336.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 8, 1997.*

Decided Aug. 15, 1997.

William J. Powell, Rosanna M. Peterson, Powell & Morris, Spokane, WA, for plaintiff–appellant.

James M. Kalamon and Michael B. Love, Chase, Hayes & Kalamon, Spokane, WA, for defendant–appellee.

---

* The panel unanimously finds this case suitable for decision without oral argument.   Fed. R.App. P. 34(a) and Ninth Circuit Rule 34–4.

Before: WRIGHT, D.W. NELSON, and KOZINSKI, Circuit Judges.

PER CURIAM:

Cynthia Thompson appeals the district court's grant of summary judgment in favor of her former employer, Holy Family Hospital. Thompson brought this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 (1994), alleging that she was terminated from her position as a registered nurse on the basis of her disabling neck and back strain. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. Factual and Procedural Background

Thompson was employed by Holy Family beginning in October 1984. In April 1987, she sustained a work-related cervical injury which recurred several times between 1988 and 1991. In February 1992, after her most recent injury-related absence, Thompson's personal physician released her to return to work but imposed a restriction from lifting more than 25 pounds on a continuous basis, more than 50 pounds twice a day, and more than 100 pounds once a day. Holy Family previously had accommodated Thompson's injury by modifying her schedule and assigning her to a light-duty position in the Short Stay Unit in May 1989.[1] However, when it was informed that the restrictions on her ability to lift were permanent, the hospital determined that Thompson could not provide total patient care and placed her on a leave of absence as of March 1992. Holy Family subsequently notified Thompson of an available position elsewhere in the hospital, but her application for the job was rejected. Thompson contends that she was terminated by Holy Family rather than placed on a leave of absence; she currently is employed in a sales position at a health care equipment company.

In December 1994, after receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Thompson filed a complaint under the ADA and Title VII.[2] Holy Family moved for summary judgment on the basis of Thompson's failure to raise a genuine issue of material fact as to whether she is disabled or regarded as disabled within the meaning of the ADA. The district court granted the hospital's motion, and Thompson appeals.

## II. Standard of Review

■ We review the grant of summary judgment de novo. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to Thompson's claim, whether there are any genuine issues of fact and whether the district court correctly applied the ADA. *Id.*

## III. Discussion

■ In order to lay claim to the protections of the ADA, Thompson must first demonstrate that she is disabled within the meaning of the Act. Disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Thompson claims that her cervical injury substantially limits her ability to lift and to work; the ADA's implementing regulations include both lifting and working within the compass of "major life activities." *See* 29 C.F.R. Pt. 1630, App. § 1630.2(i) (1996) (lifting); 29 C.F.R. § 1630.2(i) (working).

Thompson has not, however, put forth the requisite evidence that she is substantially limited with respect to these activities. In general, "substantially limited" refers to the inability to perform a major life activity as

---

1. In January 1992, an independent vocational counselor performed a job analysis of the registered nurse position in the Short Stay Unit where Thompson was employed and determined that a nurse in her position would have to lift 100 pounds two to three times per week, 50 to 100 pounds one to two times per week, 20 to 50 pounds rarely, 10 to 20 pounds occasionally, and 0 to 10 pounds frequently. He also concluded that the nursing position could not be modified to eliminate exertional requirements in excess of 25 pounds.

2. Thompson has since agreed to the dismissal of her Title VII claim.

compared to the average person in the general population or a significant restriction "as to the condition, manner, or duration" under which an individual can perform the particular activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii).

In assessing whether Thompson is so limited, we are in territory well-charted by our colleagues in other circuits. A number of courts have held that lifting restrictions similar to Thompson's are not substantially limiting, and we agree. *See Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir.1996) (declaring, as a matter of law, that a 25–pound lifting limitation "does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity"), *cert. denied,* —— U.S. ——, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997). *see also Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1319 (8th Cir.1996) (holding that a 25–pound lifting restriction did not substantially limit any major life activities); *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir.1996) (concluding, where a plaintiff could lift and reach as long as he avoided heavy lifting, that he was not substantially impaired).

We further conclude that Thompson has not raised a genuine issue of fact as to whether her injury curtails her general ability to work. To establish a substantial limitation, Thompson must demonstrate that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). The inability to perform one particular job does not constitute such a limitation. *Id.*

Thompson points to no evidence that the restrictions on her ability to perform total patient care preclude her from engaging in an entire class of jobs. Nor does she offer the information relevant to this particularized determination. *See* 29 C.F.R. § 1630.2(j)(3)(ii); *see also Bolton v. Scrivner*, 36 F.3d 939, 944 (10th Cir.1994) (affirming summary judgment for the employer where the evidence did not address the plaintiff's "vocational training, the geographical area to which he has access, or the number and type of jobs demanding similar training from which [plaintiff] would also be disqualified"), *cert. denied,* 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). The only evidence in the record addressing Thompson's experience and opportunities is the affidavit of a vocational rehabilitation counselor that was submitted by the hospital. After stating his belief that total patient care is not an appropriate assignment for an individual with a 25–pound exertional limitation, the counselor notes that Thompson would be qualified for a number of the positions available to registered nurses in the Spokane, Washington labor market. Thompson has not countered this suggestion with evidence of a significant decline in her ability to obtain employment. Indeed, while no longer performing total patient care, she currently is employed in the health care industry. *See Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995) (stating that the major life activity of working "does not mean working at a particular job of that person's choice"); *Miller v. AT & T Network Sys.,* 722 F.Supp. 633, 639 (D.Or. 1989) ("[I]n order to come within the protection of the statute, the impairment must substantially limit an individual's employability generally, and not just with respect to one particular job."), *aff'd and adopted,* 915 F.2d 1404 (9th Cir.1990). *Compare Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 911 (7th Cir.1996) (holding that a reasonable jury could conclude that physical restrictions on lifting, pulling and pushing substantially limited the ability of a coal miner to work in a broad range of jobs including mining and construction.)

Recent decisions from other circuit courts support our view that Thompson's conclusory allegations are insufficient to withstand the motion for summary judgment. In *McKay v. Toyota Mfg., U.S.A., Inc.,* 110 F.3d 369, 373 (6th Cir.1997), the Sixth Circuit determined that a plaintiff with carpal tunnel syndrome who was incapable of lifting over 20 pounds did not raise a genuine issue as to her disqualification from a broad range of jobs in various classes. The Fifth Circuit reached a similar conclusion in *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723 (5th Cir.1995), in which it stated that "the inability to perform one

aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working." *Id.* at 727; *see also Daley v. Koch,* 892 F.2d 212, 215 (2d Cir.1989) (holding, under the Rehabilitation Act, that unsuitability to be a police officer is not a substantial limitation on working); *Forrisi v. Bowen,* 794 F.2d 931, 934 (4th Cir.1986) (reasoning that a substantially limiting impairment under the Rehabilitation Act must pose a "general disadvantage in [the] search for satisfactory employment").

■ Furthermore, we reject Thompson's assertion that Holy Family "regarded" her as substantially limited in her ability to lift or work. *See* 42 U.S.C. § 12102(2)(C). "As with real impairments, ... a perceived impairment must be substantially limiting and significant." *Gordon v. E.L. Hamm & Assocs., Inc.,* 100 F.3d 907, 913 (11th Cir.1996). Even if Holy Family believed that Thompson was incapable of lifting 25 pounds, it does not follow that the hospital regarded her as disabled. We noted previously that a 25–pound restriction does not amount to a substantial limitation on the ability to lift. *See Williams,* 101 F.3d at 349.

■ Thompson also points to affidavits by her supervisors noting her inability to perform the duties required in a position of total patient care. However, an employer's decision to terminate an employee "based upon the physical restrictions imposed by [her] doctor ... does not indicate that [the employer] regarded [her] as having a substantially limiting impairment." *Wooten,* 58 F.3d at 386. The evidence does not establish that the hospital viewed Thompson as precluded from performing a broad class of jobs.[3] Indeed, Thompson was made aware of another job opportunity at the hospital, and Holy Family submitted a counselor's affidavit enumerating several possible jobs in the nursing industry. *See Gordon,* 100 F.3d at 913 (de-

termining that, in the context of perceived disabilities, a significant impairment is one that the employer views as foreclosing the type of employment involved); *Ray,* 85 F.3d at 229–30 (although an employee was terminated because his medical condition prevented him from performing his job as a lift truck operator, there was no evidence that his employer regarded him as incapable of performing another job); *Welsh v. City of Tulsa, Okl.,* 977 F.2d 1415, 1419 (10th Cir.1992) ("[A]n impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the [Rehabilitation] Act.").

## IV. Conclusion

For the foregoing reasons, we conclude that Thompson cannot demonstrate a disability within the meaning of the ADA, and we affirm the grant of summary judgment to Holy Family.

**AFFIRMED.**

---

**3.** In support of her claim, Thompson cites *Holihan v. Lucky Stores, Inc.,* 87 F.3d 362, 366 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997), in which this court identified a genuine issue of fact as to whether an employer regarded a claimant as disabled where the claimant had exhibited abusive behavior toward his coworkers, and the em-

ployer had received reports diagnosing the employee with depression, anxiety, and stress. *Id.* However, in contrast to Thompson's exertional limitation, the perception that an employee suffers from a disabling psychiatric condition would disqualify the employee from a broad range of jobs.