**Jimmy L. DUNCAN, Appellee,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant.**

**No. 99–7073.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 16, 1999.

Decided Jan. 28, 2000.

Order Granting Rehearing En Banc and Vacating Judgment March 31, 2000.

Bruce P. Heppen argued the cause for the appellant. Cheryl C. Burke and Robert J. Kniaz were on brief for the appellant.

Bruce M. Bender argued the cause for the appellee. Suzanne L. Lawrence entered an appearance.

Before: EDWARDS, Chief Judge, SILBERMAN and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

Dissenting opinion filed by Chief Judge EDWARDS.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Washington Metropolitan Area Transit Authority (WMATA) challenges the district court's denial of judgment as a matter of law on the claims Jimmy Duncan brought under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.* (1994), and for which a jury returned a verdict awarding Duncan $250,000 in compensatory damages: $125,000 for the "decision not to reasonably accommodate [him]" and $125,000 "as a result of [WMATA's] decision to terminate [him]." Judgment on the Verdict, ¶¶ 7, 8. WMATA also challenges two post-trial orders granting attorney's fees and costs and one post-trial order granting backpay and prejudgment interest.

We conclude that Duncan failed to establish he was disabled and thus protected under the ADA and, therefore, reverse the district court's order denying judgment as a matter of law. We also vacate the jury verdict and the posttrial orders noted above.

I.

Duncan, forty-seven years old at the time of trial, attended high school and trade school in electronics but completed neither. He has an employment history of unskilled labor positions, many requiring heavy lifting. He began working for WMATA in May 1986 as a custodian, a position that required him to lift between 75 and 100 pounds. Duncan then became an Automated Fare Collector (AFC) parts runner in November 1991. He testified that 30 pounds was the heaviest lifting required and his testimony was corroborated by that of a co-worker. In early December 1992, as a result of another employee's grievance, Duncan was transferred involuntarily to the Elevator/Escalator branch (ELES) into a position requiring heavy lifting.

From 1989 to 1992 Duncan sustained several back injuries including an off-duty automobile accident in February 1992. Some of the injuries required a number of weeks away from work or on light duty but in each instance Duncan was able to return to work without restriction. On December 16, 1992, working his third night in ELES, Duncan re-injured his back. Duncan reported the injury to his supervisor, John Weston, who referred him to WMATA's Associate Medical Director, Dr. Mary O'Donnell. Duncan also saw his orthopaedist, Dr. Harvey N. Mininberg. At that time, Dr. Mininberg limited Duncan's lifting to no more than 20 pounds. *See* Joint Appendix (JA) 60. After another visit in late January 1993, Dr. Mininberg confirmed the restriction. *See id.* 61.

The medical restriction precluded Duncan from returning to his job in ELES. Weston told Duncan that no light duty position was available in ELES and Duncan was placed on leave without pay. Between December 1992 and August 1993 Duncan periodically contacted Weston and Weston's supervisor to inquire about light-duty work. Duncan also applied for two vacancies in his former AFC position, one in March and the other in July. Apparently Duncan's first application was not forwarded to the decisionmaker, Charles Beuttner, but the second was. Beuttner declined to interview Duncan for the second position after learning that Duncan was in the process of being terminated, *see infra,* and was "physically disqualified." JA 307–08.

In mid-August 1993 Duncan received a letter from Weston requesting that he schedule an appointment with Dr. O'Donnell and take with him all medical records dating from February 1993 relevant to restrictions on duty as a parts runner, including a statement from his treating physician regarding his current condition.

Duncan returned to Dr. Mininberg who referred him to a neurologist he had seen before, Dr. Najmaldin Karim. Dr. Karim was out of town until September 1993. At his August 23 appointment with Dr. O'Donnell, she was annoyed by his failure to bring the requested information, told him to leave and said that he likely would lose his job. Ultimately, Dr. Karim issued the requested letter of evaluation on September 10, 1993. The letter stated that Duncan could not perform heavy lifting but could work in the AFC position. Believing WMATA already had decided to fire him, however, Duncan never submitted the letter to WMATA. Weston had drafted a letter of termination on August 31, citing failure to respond to requests from WMATA's medical office but the letter was not sent until October 7, 1993.

Due to his impairment, Duncan could not perform any of the jobs he had had before being employed by WMATA. He inquired about some truck driving positions and eventually acquired a light-duty, part-time position at Hertz Corporation where he earned less money than he had earned with WMATA.

## II.

■■■■ We review *de novo* the trial court's denial of a motion for judgment as a matter of law or, in the alternative, for a new trial. *See Curry v. District of Columbia,* 195 F.3d 654, 658–59 (D.C.Cir.1999). We will not disturb a jury verdict "unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict." *Id.* at 659 (quoting *Smith v. Washington Sheraton Corp.,* 135 F.3d 779, 782 (D.C.Cir. 1998)). Evidence supporting the verdict, however, must be "more than merely colorable; it must be significantly probative." *Id.* (quoting *Smith,* 135 F.3d at 782).

■■■■] In an ADA case with no direct evidence of discrimination and where the defendant denies that its decisions were motivated by the plaintiff's disability, this court uses the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Marshall v. Federal Express Corp.,* 130 F.3d 1095, 1099 (D.C.Cir.1997). Under that framework, an ADA plaintiff must prove that "he had a disability within the meaning of the ADA, that he was 'qualified' for the position with or without a reasonable accommodation, and that he suffered an adverse employment action because of his disability." *Swanks v. WMATA,* 179 F.3d 929, 934 (D.C.Cir.1999). Thus "the threshold issue is whether plaintiff had a 'disability.'" *E.g., Weber v. Strippit, Inc.,* 186 F.3d 907, 912 (8th Cir.1999); *accord Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1161 (10th Cir.1999).

■■■] The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual."[1] 42 U.S.C. § 12102(2)(A). In analyzing whether a plaintiff has established a disability under this provision, the United States Supreme Court follows three steps: (1) it considers whether the plaintiff's condition was a physical impairment; (2) it identifies the life activity upon which plaintiff relies and determines whether it constitutes a major life activity under the ADA; and (3) it decides whether the impairment substantially limited the major life activity. *See Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). The parties to this appeal agree that Duncan's degenerative disc disease was a physical impairment and that "working" is the activity involved and that it is a major life activity under the ADA. *See, e.g.,* Brief of Appellant, at 16; Brief of Appellee, at 15–19. Therefore, the issue is whether Dun-

---

1. The ADA also protects individuals who have "a record of such an impairment" and those whose employers "regard[] as having such an impairment." 42 U.S.C. § 12102(2). Duncan makes no claim under either alternative approach.

can's back impairment substantially limited his ability to work. The Supreme Court recently considered what "substantially limits" means in the context of one's ability to work in *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, ———–———, 119 S.Ct. 2139, 2150–51, 144 L.Ed.2d 450 (1999). The Court first noted that the term "substantial[ ]" suggests "considerable" or "specified to a large degree." 527 U.S. at ——, 119 S.Ct. at 2150. It noted the definition of "substantially limits" as "unable to perform". or "significantly restricted" contained in the regulations of the Equal Employment Opportunity Commission (EEOC). *Id.* at 2150–51 (quoting 29 C.F.R. §§ 1630.2(j)(1)(i), (ii) (1998)). The Court then clarified what a plaintiff must show to demonstrate that an impairment substantially limited his ability to work:

> When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work *in a broad class of jobs.* . . . To be substantially limited in the major life activity of working, then, one must be *precluded from more than one type of job,* a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Id.* at 2151 (emphasis added). The *Sutton* Court stressed that "whether a person has a disability under the ADA is an individualized inquiry," *id.* at 2147 (citing *Bragdon,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540), and noted several factors courts "should consider" when making this determination, including the accessible geographical area and the number of similar jobs within that area from which the individual also is disqualified. *Id.* at 2151. Ultimately in *Sutton,* the Court held that the plaintiffs' disqualifications from their current jobs due to impairment did not establish that they were substantially limited in their ability to work, particularly where other jobs utilizing their skills were available to them. *See id.*

Claiming he presented evidence sufficient to sustain the jury verdict, Duncan points to the testimony of Drs. Mininberg and Karim that his degenerative disc disease was a permanent condition necessitating a permanent restriction on lifting, as well as his educational background, lack of skills, lack of experience outside heavy labor and inability to find similar employment. Duncan also cites the EEOC's interpretive guidelines which the Supreme Court noted in *Sutton* and which provide in part:

> [A]n individual does not have to be totally unable to work in order to be considered substantially limited in the major life activity of working. An individual is substantially limited in working if the individual is significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes, when compared with the ability of the average person with comparable qualifications to perform those same jobs. *For example, an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs. This would be so even if the individual were able to perform jobs in another class, e.g., the class of semi-skilled jobs.*

29 C.F.R. Pt. 1630.2(j), App. (emphasis added).

WMATA insists that Duncan failed to prove his degenerative disc disease substantially impaired his ability to work. While conceding that Duncan, through medical testimony, established a lifting re-

striction of approximately 20 pounds,[2] WMATA argues he did not establish, as he must, that he was thereby disqualified from a "broad class of jobs" as *Sutton* instructs. WMATA cites Duncan's failure to proffer expert testimony from a vocational rehabilitation specialist and testimony or statistical evidence regarding the numbers of jobs from which he was disqualified. Other than relying on his limited educational background and work experience, Duncan offers only his testimony that he inquired about some truck driving positions.

Other circuits have addressed claims involving arguments similar to Duncan's and have found the claims faulty for lack of evidence regarding the jobs the plaintiffs' impairments preclude them from performing.[3] In *Colwell v. Suffolk County Police Department*, 158 F.3d 635, 644–45 (2d Cir. 1998), the Second Circuit held that the plaintiffs, who complained of limitations resulting from back injuries, failed to show they were significantly restricted from working in a class or broad range of jobs. With regard to one plaintiff, the court said that "[w]ithout specific evidence about the kinds of jobs from which [an] impaired individual is disqualified, the jury could not perform the careful analysis that is necessary to determine that [plaintiff] was substantially limited in his ability to work." 158 F.3d at 645 (internal quotation marks omitted). *Accord Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1207 (8th Cir.1997). Similarly, in *Bolton v. Scrivner, Inc.*, 36 F.3d 939 (10th Cir.1994), the court examined the medical evidence tending to establish that the plaintiff suffered from a permanent partial disability but held it insufficient. Noting that such evidence "does not address [plaintiff's] vocational training, the geographical area to which he has access, or the number and type of jobs demanding similar training from which [he] would also be disqualified," the Tenth Circuit found the medical evidence relevant to the nature, severity, duration and impact of the injury but insufficient to show how plaintiff's ability to perform a class or broad range of jobs was affected. *Bolton*, 36 F.3d at 944. *See also Muller v. Costello*, 187 F.3d 298, 313 (2d Cir.1999) (plaintiff's failure to present evidence that he was precluded from jobs other than correctional officer in his geographic area and plaintiff's insistence that his class of jobs be limited to correctional officer "compelled" holding of insufficient evidence of substantial limitation on major life activity of working).

Several cases involve a plaintiff with a limitation similar to Duncan's. In *Thompson v. Holy Family Hospital*, 121 F.3d 537 (9th Cir.1997), the Ninth Circuit addressed a lifting restriction of no more than 25 pounds on a regular basis and more only

---

**2.** Dr. Karim's September 1993 evaluation, which Duncan did not submit to WMATA, and the testimony of both doctors at trial indicated that the previous 20–pound restriction was a good guideline but that Duncan could also lift somewhat heavier objects.

**3.** The dissent cites cases from other circuits finding triable issues of fact on records arguably similar to the record here. Most of those cases predate *Sutton*, however. *See* Diss. Op. at 493–95. The one case the dissent cites which was decided after *Sutton, Wellington v. Lyon County School District*, 187 F.3d 1150 (9th Cir.1999), did not cite *Sutton*. A later opinion from that circuit, *Broussard v. University of California*, 192 F.3d 1252 (9th Cir. 1999), does cite *Sutton* and is consistent with our resolution here. In *Broussard* the court

stated that surviving a motion for summary judgment "require[s] at least some evidence from which one might infer that [plaintiff] faced 'significant restrictions' in her ability to meet the requirements of other jobs." *Id.* at 1259 (quoting *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 507 (7th Cir.1998)). Accordingly, the court declared that the existence of a genuine issue of fact turned on its evaluation of the declaration of a vocational rehabilitation specialist, which was "the only evidence which might show that [plaintiff] is barred from significant percentages of available employment in the [geographical] area" because of her impairment. 192 F.3d at 1257. In the end, the court found that the declaration lacked a medical foundation and affirmed summary judgment in favor of the defendant.

rarely. The court found the plaintiff failed to prove a substantial limitation despite having established the lifting restriction: "[Plaintiff] points to no evidence that the restrictions ... preclude her from engaging in an entire class of jobs. Nor does she offer the information relevant to this particularized determination." 121 F.3d at 540. The *Thompson* court also cited decisions from other circuits finding similar lifting restrictions not substantially limiting. *See id.* (citing *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir.1996) (25–pound lifting limitation, as matter of law, "does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity"); *Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1319 (8th Cir.1996) (25–pound lifting restriction did not substantially limit any major life activities); *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir.1996) (plaintiff not substantially impaired by limitation on heavy lifting where he otherwise could lift and reach)); *see also Snow*, 128 F.3d at 1207 ("[A] general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA.").

Duncan attempts to distinguish himself from the plaintiffs in the cases above with the claim that he established substantial limitation by showing he has a limited educational background, is unskilled and has performed only jobs requiring heavy lifting. Duncan's third distinguishing factor deserves little credence in light of his experience as an AFC parts runner, a position that requires no heavy lifting (and that he claims he is able to perform without assistance). On the whole, however, Duncan simply offers no evidence we can weigh in using the factors the Supreme Court tells us to use. The evidence he does offer is his testimony that he inquired about some truck driving positions, *see* JA 136–38, but he could name no other kind of job he investigated as part of his effort to find employment. *See id.* 138; *see also Sutton*, 527 U.S. at ——, 119 S.Ct. at 2151 ("If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs.").

In short, Duncan completed only half of the puzzle. He established that he had an impairment that *may have* substantially limited his ability to work but he failed to show that his impairment in fact *did* substantially limit his ability to work. Duncan relied on his limited educational background and the fact that most of his earlier unskilled work involved heavy lifting which he could no longer perform. Duncan, however, did not demonstrate what jobs were available to unskilled workers in his geographical area and thus could not show that his impairment precluded him from performing those jobs.[4]

---

4. We reject the example included in the EEOC interpretive guidelines regarding an individual with a back condition preventing him from performing heavy labor because it is at odds with *Sutton*. Guiding our consideration—and rejection—of the interpretive guidelines found at 29 C.F.R. Pt. 1630.2(j), App., is the Supreme Court's acknowledgment that "[n]o agency ... has been given authority to issue regulations implementing the generally applicable provisions of the ADA," *Sutton*, 527 U.S. at ——, 119 S.Ct. at 2145 (citations omitted), coupled with its decision not to reach the issue of what deference, if any, courts owe the EEOC regulations. *See id.* ("Because both parties accept these regulations as valid, and determining their validity is not necessary to decide this case, we have no occasion to consider what deference they are due, if any."). Although we defer to EEOC regulations where appropriate, *see, e.g., Bell v. Brown*, 557 F.2d 849, 855 (D.C.Cir.1977) ("[A]n administrative interpretation of a statute by an agency entrusted with its administration commands great deference in the courts."), we decline to do so with its interpretive guidelines where, as here, they lead to a result contrary to the one Supreme Court precedent leads to. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 n. 6, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) ("EEOC guidelines are properly accorded less weight than administrative regulations declared by Congress to have the force of law."); *see generally Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944) (weight of agency's interpretation of statute

Duncan's limited "search" for another job hardly informs us what positions were generally available in his geographic area for unskilled workers, much less for workers with a lifting restriction like his. Not only have our sister circuits required this type of evidence but the Supreme Court has told lower courts to consider these factors when making individualized determinations of disability. *See Sutton*, 119 S.Ct. at 2151. The evidence Duncan offered to establish that his impairment substantially limited his ability to work is no more than "merely colorable" and it is not significantly probative. *Curry v. District of Columbia*, 195 F.3d 654, 659 (D.C.Cir. 1999). Therefore, we find the evidence insufficient to support the jury's necessary finding that Duncan was a person with a disability under the ADA. Accordingly, Duncan's claim fails as a matter of law.

For the foregoing reasons, the order of March 26, 1998 denying WMATA's motion for judgment as a matter of law is reversed. The judgment on the jury verdict entered May 29, 1997 is vacated, as are the district court's post-trial orders awarding attorney's fees and costs and granting Duncan backpay and prejudgment interest.

*So ordered.*

EDWARDS, Chief Judge, dissenting:

On the record at hand, there was sufficient evidence for the jury to conclude that Mr. Duncan was disabled under the Americans with Disabilities Act ("ADA"). The majority opinion proposes a standard of proof in ADA cases that is unprecedented and unsupported. The case law from our sister circuits does not support the majority's position. And recent Supreme Court decisions construing the ADA cannot be stretched to accommodate the majority's rigid formulation of a plaintiff's burden of proof under the statute. The jury's verdict in this case should stand.

"will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its *consistency with ... later pronounce-*

## I. ANALYSIS

### A. Standard of Review

The defendant claims no legal error— *i.e.*, no alleged improper exclusions or admissions of evidence and no alleged faulty jury instructions. If this case involved legal error that was found not to be harmless, we would merely remand for a new trial pursuant to the correct legal standard. *See, e.g., Griffin v. Washington Convention Ctr.*, 142 F.3d 1308, 1312 (D.C.Cir.1998) (remanding for a new trial because of erroneous exclusion of evidence). The defendant here seeks much more, however, claiming that the jury verdict should be set aside and judgment entered against the plaintiff for lack of sufficient evidence. In other words, in asking this court to issue a judgment of law in its favor, the defendant seeks to have us " 'intrude[ ] upon the jury's domain.' " *McNeal v. Hi–Lo Powered Scaffolding, Inc.*, 836 F.2d 637, 640 (D.C.Cir. 1988) (quoting *Carter v. Duncan–Huggins, Ltd.*, 727 F.2d 1225, 1227 (D.C.Cir.1984)). This is something that a court will rarely do, because neither the trial judge nor an appellate court may " 'usurp[ ] the prime function of the jury as the trier of the facts.' " *Id.* at 646 (quoting *Lind v. Schenley Indus.*, 278 F.2d 79, 90 (3d Cir.1960) (en banc)); *see also Stenograph, L.L.C. v. Bossard Assoc.*, 144 F.3d 96, 100 (D.C.Cir. 1998) (affirming district court's denial of a judgment as a matter of law for defendants); *Burns v. Washington Metro. Area Transit Auth.*, 114 F.3d 219, 221 (D.C.Cir. 1997) (per curiam) (reversing magistrate's grant of a judgment as a matter of law for defendant); *Barbour v. Merrill*, 48 F.3d 1270, 1277 (D.C.Cir.1995) (affirming district court's denial of defendant's motion for a judgment as a matter of law); *Mackey v. United States*, 8 F.3d 826, 830 (D.C.Cir.1993) (reversing district court's

*ments")* (emphasis added). We therefore decline to follow the EEOC's guidelines here.

grant of a judgment as a matter of law for defendant); *Parker v. District of Columbia,* 850 F.2d 708, 711 (D.C.Cir.1988) (giving jury awards "the utmost of deference and respect") (internal quotation marks omitted). Under well-established case law that is designed " 'to protect the litigants' right to jury trial,' " *McNeal,* 836 F.2d at 647 (quoting *Lind,* 278 F.2d at 90), the courts are strictly limited from either granting a new trial or granting a motion for judgment as a matter of law on the grounds that the jury's verdict was against the weight of the evidence. To this end, the law is clear that a verdict "will withstand challenge unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict." *Swanks v. Washington Metro. Area Transit Auth.,* 179 F.3d 929, 933 (D.C.Cir.1999) (internal quotation marks omitted), *cert. denied,* —— U.S. ——, 120 S.Ct. 614, 145 L.Ed.2d 509 (1999). In light of this very narrow standard of review, there is no basis upon which to set aside the jury verdict in favor of Mr. Duncan.

*B. The ADA's Approach to Substantial Limitation of the Major Life Activity of Working*

The ADA defines a disability as, *inter alia,* "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A) (1994). Mr. Duncan's back condition constitutes a physical "impairment" under the statute. The only question at issue here is whether he provided sufficient evidence for a reasonable jury to conclude that his impairment "substantially limits" any of his major life activities.

Equal Employment Opportunity Commission regulations define "major life activities," nonexhaustively, as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R.

§ 1630.2(i) (1999). Mr. Duncan claims that his back condition substantially limits his ability to work. The regulations say that, with respect to working, "substantially limits" means

significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

*Id.* § 1630.2(j)(3)(i).

The regulations also indicate that

the following factors *may* be considered in determining whether an individual is substantially limited in the major life activity of "working":

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

*Id.* § 1630.2(j)(3)(ii) (emphasis added).

The question that we face is whether the "evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree," *Swanks,* 179 F.3d at 933 (internal quotation marks omitted), that Mr. Duncan was not significantly re-

stricted in his ability to perform either a class of jobs or a broad range of jobs. The majority essentially holds that, because Mr. Duncan provided no quantitative evidence detailing the relevant job market, no reasonable juror could conclude that he was significantly restricted in his ability to perform either a class or a broad range of jobs. In my view, the majority asks too much of an ADA plaintiff, for neither the statute, regulations, nor case law require quantitative evidence of the sort that the majority here demands.

## C. The Case Law From Our Sister Circuits

No relevant cases from within this circuit apply to the question before this panel: What quantum of evidence is required simply to reach the jury on the question of whether a plaintiff is substantially limited in the major life activity of working? The relevant law from our sister circuits, however, compels the conclusion that the majority has answered this question incorrectly.

It is beyond peradventure that a plaintiff cannot establish that he is substantially limited in his ability to work simply by showing that he is disqualified from one particular job. *See Sutton v. United Airlines, Inc.,* —— U.S. ——, ——, 119 S.Ct. 2139, 2151, 144 L.Ed.2d 450 (1999). At the same time, however, courts do not require ADA plaintiffs to prove that almost all jobs are outside their reach in order to avoid summary judgment or a judgment as a matter of law. *See DePaoli v. Abbott Labs.,* 140 F.3d 668, 672 (7th Cir.1998) ("[A]n employer cannot avoid liability by showing that the employee is still generally capable of doing some economically valuable work in the national economy."). Rather, courts require "at least some evidence from which one might infer that [the plaintiff] faced 'significant restrictions' in her ability to meet the requirements of other jobs." *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 507 (7th Cir.1998) (describing what plaintiff must do to defeat a

motion for summary judgment); *see also Swain v. Hillsborough County Sch. Bd.,* 146 F.3d 855, 858 (11th Cir.1998) ("Although a plaintiff seeking recovery under the ADA is not required to provide a comprehensive list of jobs which she cannot perform, the person must provide some evidence beyond the mere existence and impact of a physical impairment to survive summary judgment.").

In determining what "class of jobs" is relevant for deciding whether the plaintiff is substantially limited in his ability to work, the analysis must focus on the personal characteristics of the particular plaintiff. Thus, a court must reasonably look to a plaintiff's "expertise, background, and job expectations." *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 487 (8th Cir.1996). Indeed, as one court has commented, "it is not easy to envision how any other approach could be taken." *Mondzelewski v. Pathmark Stores, Inc.,* 162 F.3d 778, 784 (3d Cir.1998) (adopting approach "under which an individual's training, skills, and abilities are taken into account in determining whether the individual is substantially limited in the major life activity of working").

I can find no decision in which an appellate court has held that an ADA plaintiff *must* present evidence similar to that required by the majority in the instant case. The contrast between the majority's stance and that taken by most other courts is best demonstrated by considering the justifications cited by courts that have granted summary judgment or a judgment as a matter of law for defendants in disability discrimination cases.

An obvious situation in which courts have granted summary judgment or a judgment as a matter of law in favor of a defendant arises where the plaintiff fails to allege exclusion from a sufficiently broad class of jobs. *See Muller v. Costello,* 187 F.3d 298, 313 (2d Cir.1999) (stating that the category of "correctional officer" was not a "class of jobs" under the ADA); *Zenor v. El Paso Healthcare Sys., Ltd.,*

176 F.3d 847, 861 (5th Cir.1999) (finding position of pharmacist not to be a class of jobs); *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 725–26 (7th Cir.1998) (finding insufficient evidence of a substantial limitation where plaintiff was only disqualified from one sort of teaching position); *Bridges v. City of Bossier*, 92 F.3d 329, 334–36 (5th Cir.1996) (finding that the category of firefighting jobs is not a "class of jobs"); *Daley v. Koch*, 892 F.2d 212, 215 (2d Cir.1989) ("Being declared unsuitable for the particular position of police officer is not a substantial limitation of a major life activity."). This is not the situation here. Mr. Duncan demonstrated, with no serious dispute, that he was precluded from performing jobs requiring medium, heavy, and very heavy lifting; this is a sufficiently broad class of jobs to satisfy the requirements of the statute. *Cf. Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 303–04 (4th Cir.1998) (finding maintenance supervisory work to be a class of jobs); *DePaoli*, 140 F.3d at 673 (considering "any assembly line job that required repetitive movement" to be a class of jobs).

Another obvious situation in which courts have found evidence insufficient to go to the jury arises where the plaintiff was able to secure employment similar to that from which he was allegedly disabled. *See Gutridge v. Clure*, 153 F.3d 898, 901 (8th Cir.1998) (emphasizing fact that plaintiff found other similar employment in finding no evidence of a substantial limitation in the major life activity of working), *cert. denied*, —— U.S. ——, 119 S.Ct. 1758, 143 L.Ed.2d 790 (1999); *Patterson*, 150 F.3d at 726 (finding insufficient evidence of a substantial limitation where plaintiff, upon termination, became employed with the Chicago school system); *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 200 (4th Cir.1997) (finding insufficient evidence to defeat a motion for summary judgment where "there is absolutely no indication that Halperin's lifting restriction significantly limits his ability to perform a wide range of jobs" especially where the record showed that Halperin could, and did, "find

comparable employment with a different employer"); *Zirpel v. Toshiba America Info. Sys., Inc.*, 111 F.3d 80, 81 (8th Cir. 1997) (finding no substantial limitation where plaintiff "has had three jobs since her discharge, and she currently holds a quality control position nearly identical to the one she held at Toshiba"); *Gupton v. Virginia*, 14 F.3d 203, 205 (4th Cir.1994) (finding no substantial limitation where plaintiff "presented no evidence that her allergy [to tobacco smoke] foreclosed her generally from obtaining jobs in her field" and where defendant offered her a position in her field in a nearby office); *see also Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 724 (2d Cir.1994) (affirming grant of summary judgment for defendant where plaintiff had a master's degree and had been gainfully employed since receiving her degree). In this case, Mr. Duncan and his physicians testified that he was unable to perform jobs similar to that from which he was fired. After moving out of his apartment because of his inability to pay rent, Mr. Duncan eventually took a part-time light-duty job with a rental car company in which he earns approximately one-third of his previous salary.

The majority focuses attention, however, on a few decisions that mention a lack of quantitative evidence with respect to the relevant job market in holding that a plaintiff failed to offer sufficient proof for a jury to conclude that he or she was disabled. None of these cases can be stretched to support the majority's apparent *per se* requirement that an ADA plaintiff provide quantitative evidence detailing the job market. Rather, they establish the *relevance*, not the *necessity*, of such evidence.

For example, the instant case is easily distinguishable from *Thompson v. Holy Family Hospital*, 121 F.3d 537 (9th Cir. 1997) (per curiam). The *Thompson* court did not treat detailed statistical evidence as a *sine qua non* of an ADA claim, but focused on the plaintiff's failure to provide job market evidence in the face of the

defendant's proffer of an affidavit from a vocational counselor stating that the plaintiff, a nurse, remained qualified for a number of registered nurse positions. *See id.* at 540 (noting, in addition, that plaintiff remained employed in the health care industry). The defendant made no such showing here.

Similarly, in *Bolton v. Scrivner*, 36 F.3d 939 (10th Cir.1994), the court noted the lack of quantitative evidence as well as the lack of any evidence regarding the plaintiff's vocational training and the geographical area to which he had access. *See id.* at 944. The *Bolton* court nowhere suggested that detailed quantitative evidence on the relevant job market was essential to the plaintiff's case. Here, apparently contrary to the plaintiff in *Bolton*, Mr. Duncan did provide testimony regarding his work experience, education, and vocational training.

The *Muller* decision is also distinguishable on its facts. In *Muller*, the defendant had identified several jobs for which the plaintiff remained qualified, and the plaintiff stubbornly insisted that "correction officer" was a class of jobs. Because the plaintiff presented no evidence that he was precluded from jobs other than correction officer, the court had no real choice but to issue a judgment as a matter of law for the defendant. *See* 187 F.3d at 313.

Finally, the language taken by the majority from *Colwell v. Suffolk County Police Department*, 158 F.3d 635, 645 (2d Cir.1998), *cert. denied*, — U.S. ——, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999), is not inconsistent with a jury verdict in favor of Mr. Duncan. Unlike the plaintiff in *Colwell*, whose "only evidence concerned the general restrictions imposed by his doctor," *id.*, Mr. Duncan also provided evidence as to his education and vocational history. That the plaintiff in *Colwell* was faulted for not providing evidence of the "kinds of jobs," *id.* (internal quotation marks omitted), from which he was disqualified does not mean that the *Colwell* court expected detailed quantitative evidence of the relevant job market. There is no indication that the Second Circuit would have been dissatisfied if the plaintiff had simply provided more and better qualitative evidence from which a jury could have inferred a substantial limitation in his ability to work.

Most of the decisions from our sister circuits have found a triable issue of fact regarding a plaintiff's disability without even mentioning quantitative evidence detailing the relevant job market. *See Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1175 (9th Cir.1998) (per curiam) (finding that plaintiff was substantially limited in his ability to work because of depression, post-traumatic stress disorder, and panic attacks, while referring to no quantitative vocational evidence); *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781 (6th Cir.1998) (finding genuine issue of material fact regarding whether plaintiff's psoriasis substantially limited her ability to work with no reference to evidence regarding job availability); *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 630 (7th Cir.1998) (finding plaintiff's evidence sufficient to overcome summary judgment where he testified to potential hospitalization due to insulin-dependent diabetes); *Criado v. IBM Corp.*, 145 F.3d 437, 442 (1st Cir. 1998) (finding, in affirming district court's denial of employer's motion for a judgment as a matter of law, that the jury could have reasonably concluded that plaintiff's depression, testified to by plaintiff and physician, "substantially impaired the major life activity of working," while referring to no evidence regarding classes of jobs for which she was disqualified); *Cline*, 144 F.3d at 303–04 (finding a jury verdict of intentional discrimination under the ADA supportable where plaintiff showed that he was disqualified from maintenance supervisory work, and where the court made no mention of vocational evidence); *Gilday v. Mecosta County*, 124 F.3d 760, 765 (6th Cir.1997) (finding sufficient evidence to create a question of fact

as to whether plaintiff's diabetes is a disability under the ADA because plaintiff's condition made him irritable and unable to cooperate with co-workers, an ability "necessary for all but the most solitary of occupations," without reference to quantitative vocational evidence); *Best v. Shell Oil Co.*, 107 F.3d 544, 548 (7th Cir.1997) (finding that summary judgment for defendant was improper even though the record did not show how many jobs plaintiff was disqualified from because of the impairment); *Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir.1996) (finding a genuine issue of material fact as to whether bladder infection resulted in a substantial limitation of working with no reference to testimony about job market); *Pritchard v. Southern Co. Svcs.*, 92 F.3d 1130, 1134 (11th Cir.1996) (finding sufficient evidence for the case to go to the jury where an engineer suffered symptoms of "marked fatigue, lack of energy, lack of interest, poor concentration, memory problems, suicidal thoughts, depressed affect, and irritability" that limited her ability to work in nuclear engineering, even though she was able to work as a non-nuclear engineer).

It is notable that most of the reported district court decisions in the foregoing cases also made no mention of quantitative vocational evidence. *See Gilday v. Mecosta County*, 920 F.Supp. 792 (W.D.Mich. 1996); *Baert v. Euclid Beverage, Ltd.*, 954 F.Supp. 170 (N.D.Ill.1997); *Cehrs v. Northeast Ohio Alzheimer Research Ctr.*, 959 F.Supp. 441 (N.D.Ohio 1997). Indeed, among the foregoing cases, the only reported district court decision that did refer to quantitative vocational evidence considered the evidence to disfavor the plaintiff. *See Pritchard v. Southern Co. Svcs.*, 1995 WL 338662, at *8–9 (N.D.Ala. Mar.31, 1995) (finding that plaintiff did not allege sufficient evidence to support her disability claim). Nonetheless, following review, the decision of the court of appeals never even mentions the quantitative evidence in reversing the district court's holding that the plaintiff had not alleged sufficient evidence

to reach a jury. *See Pritchard*, 92 F.3d at 1134.

Research indicates that most courts that have considered facts similar to those before this court have concluded that there was sufficient evidence for resolution of the issue by a jury, even where there was no quantitative evidence detailing the relevant job market. In the instant case, Mr. Duncan adduced competent evidence that he was foreclosed from medium and heavy lifting jobs, that he had worked in jobs requiring heavy lifting in the past, that he never graduated from high school, and that he did not have computer training, clerical experience, or office skills. Given this testimony, there was sufficient evidence for the jury to conclude that Mr. Duncan was foreclosed from a class of jobs "utilizing similar training, knowledge, skills or abilities," 29 C.F.R. § 1630.2(j)(3)(ii)(B), to the job at WMATA, for which he was otherwise qualified. *See Wellington v. Lyon County Sch. Dist.*, 187 F.3d 1150, 1155 (9th Cir.1999) (question of fact as to whether plaintiff is disabled exists where plaintiff had a high school degree, his work experience was limited to manufacturing, construction, heavy maintenance and plumbing, and no evidence was presented to suggest that jobs were available for which a person with plaintiff's skills, training, and abilities was qualified); *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 11–12 (1st Cir.1999) (finding sufficient evidence for a jury to find disability because the "inability to lift heavy objects and perform repetitive manual tasks can translate across a broad spectrum of physically demanding jobs," where plaintiff testified as to his limited job experience, education, and skills, and physician testified that plaintiff was precluded from a "lot" of jobs); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 911 (7th Cir.1996) (finding a genuine dispute of material fact as to whether plaintiff who worked in coal mine was substantially limited in working where plaintiff provided evidence that he could perform "no overhead work, heavy lifting, or pulling and pushing out from his body," because these restrictions "might apply to

a broad range of jobs, and are more than job specific").

In short, the weight of the case law from our sister circuits indicates that the existence of Mr. Duncan's disability should be evaluated based upon his individual characteristics, that he must show that he is disqualified from more than one particular job, and that relevant proof to determine whether he is disabled may include his education, work history, and evidence of the job market. Other courts have been more likely to focus on the inadequacy of quantitative vocational evidence where the defendant has made a showing regarding the plaintiff's eligibility for employment. The defendant made no such showing in this case. Mr. Duncan offered more than enough to have his case heard and decided by a jury. And this court acts beyond its authority in taking the case from the jury.

### D. Relevant Supreme Court Case Law

The Supreme Court's recent pronouncements on the ADA do not give cause for this court to second-guess the jury in this case. In *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999), the Court reviewed a grant of summary judgment against an employee who was dismissed from his job as a UPS mechanic because of his high blood pressure. The employee argued in part that UPS regarded him as disabled because of his high blood pressure, alleging that the company regarded hypertension as substantially limiting him in the major life activity of working when, in fact, his hypertension did not limit his ability to work. *See id.* at 2137. The employee was fired from his job because Department of Transportation regulations require that drivers of commercial motor vehicles not have hypertension. *See id.* at 2136. The Court found that, at most, the employee was regarded as unable to perform only one particular job, which is insufficient to show that he is regarded as substantially limited in the major life activity of working. *See id.* at 2138–39. The Court noted that the employee "put forward no evidence that he is regarded as unable to perform any mechanic job that does not call for driving a commercial motor vehicle and thus does not require DOT certifica-

tion." *Id.* at 2139. It was undisputed, according to the Court, that in fact petitioner was "generally employable as a mechanic." *Id.* This lack of evidence put forward by petitioner combined with the uncontroverted evidence put forth by respondent that he could "perform jobs such as diesel mechanic, automotive mechanic, gas-engine repairer, and gas-welding equipment mechanic" convinced the Court that petitioner was not regarded as substantially impaired in the major life activity of working. *Id.* The Court's decision nowhere suggests that an ADA plaintiff must present quantitative evidence within the rigid formula devised by the majority here in order to demonstrate a substantial limitation in the major life activity.

In *Sutton*, two myopic sisters were rejected from a pilot position because they did not meet United's minimum vision requirement. Their suit was dismissed for failure to state a claim upon which relief could be granted. *See Sutton*, 119 S.Ct. at 2144. The petitioners alleged, *inter alia*, that United mistakenly regarded their physical impairments as substantially limiting them in the major life activity of working. *See id.* at 2150. The Court rejected this argument, again finding that petitioners had only alleged preclusion from one job, that of global airline pilot. *See id.* at 2151. According to the Court,

[t]o be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Id.* After noting that petitioners had only alleged that United regarded them as being ineligible for one particular job, the Court observed that "there are a number of other positions utilizing petitioners' skills, such as regional pilot and pilot instructor to name a few, that are available

to them." *Id.* In *Sutton,* then, as opposed to the instant case, the plaintiffs could only allege exclusion from one particular job, which has long been insufficient to support a claim of disability under the ADA.

The majority attempts to evade the weight of authority from our sister circuits by drawing a line between pre-*Sutton* and post-*Sutton* cases. *See* Maj. Op. at 487 n.3. This attempted distinction is unconvincing absent some explanation as to why quantitative evidence regarding the available job market would be more relevant in a post-*Sutton* inquiry. The majority cites *Sutton,* 527 U.S. at ——, 119 S.Ct. at 2151, to say that there are several factors courts "should consider" in assessing claims under the ADA, as if to suggest that a plaintiff *must* produce quantitative evidence detailing the relevant job market. *See* Maj. Op. at 486. This is not what *Sutton* says. Rather, in the section of the *Sutton* opinion cited by the majority, the Supreme Court merely notes that

> [t]he EEOC further identifies several factors that courts should consider when determining whether an individual is substantially limited in the major life activity of working, including the geographical area to which the individual has reasonable access, and "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified." §§ 1630.2(j)(3)(ii)(A), (B).

*Sutton,* 527 U.S. at ——, 119 S.Ct. at 2151. Nothing in the EEOC regulations, however, says that a plaintiff *must* in every case proffer quantitative evidence detailing the relevant job market. Indeed, the relevant regulations both pre-*Sutton* and post-*Sutton* suggest that courts may look to the available job market as one among several relevant factors in evaluating whether or not an individual is disabled. *Sutton* does nothing to change this.

The majority's treatment of post-*Sutton* cases is also unconvincing. *See* Maj. Op. at 487 n.3. The majority attempts to diminish the decision in *Wellington* by citing a later decision from the Ninth Circuit, *Broussard v. University of California, at Berkeley,* 192 F.3d 1252 (9th Cir.1999).

The court in *Broussard,* however, found the expert's vocational report to be unreliable for two reasons ignored by the majority: the expert assumed, based on no documented evidence, that the plaintiff had a lifting restriction; and the expert incorrectly assumed that the plaintiff could only type for 15 minute intervals when testing had established she could type for 50 minute intervals. *See Broussard,* 192 F.3d at 1258. Obviously, in such circumstances, an expert's testimony should be rejected as unreliable. More importantly, *Broussard* cites *Bolton v. Scrivner* approvingly, indicating the *relevance* of three separate types of evidence for the purposes of establishing a disability: a plaintiff's vocational training, the geographical area to which he has access, or the number and types of jobs from which a plaintiff is disqualified. *See Broussard,* 192 F.3d at 1258 (citing *Bolton,* 36 F.3d at 944).

Significantly, *Broussard* makes it clear that a plaintiff's burden under the ADA is nothing like the test enunciated by the majority in this case. Rather, as the Ninth Circuit notes:

> To defeat the University's motion for summary judgment, Broussard needed to "identify what requirements posed by the class of [animal care] jobs … were problematic in light of the limitations that [CTS] imposed on her. This is not an onerous requirement, but it does require at least some evidence from which one might infer that [plaintiff] faced 'significant restrictions' in her ability to meet the requirements of other jobs." *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 507 (7th Cir.1998). Broussard has failed to meet this requirement.

*Broussard,* 192 F.3d at 1259. The court's references to *"not an onerous requirement," "at least some evidence,"* and *"one might infer"* are a far cry from what the majority seeks here.

Finally, and most tellingly, *Broussard* cites *Sutton* merely to say that the plaintiff's "inability to perform the specialized job of animal technician for the transgenic mice does not constitute a substantial limi-

tation." *Id.* The court drew nothing more from *Sutton.*

As one of our sister circuits has observed, in the context of proving a substantial limitation of the major life activity of working, *Sutton* and *Murphy* principally stand for the proposition that an ADA plaintiff must "do more than allege that he is regarded as having an impairment which prevents him from working at a particular job." *Shipley v. City of University City,* 195 F.3d 1020, 1023 (8th Cir.1999). This is not an earth-shaking notion, nor is it one that shatters the foundation of the ADA. However, that a plaintiff is not "disabled" merely because he or she cannot perform a preferred job is a far cry from saying that, in order to prevail under the ADA, a plaintiff *must* in every case proffer expert testimony from a vocational specialist and statistical evidence regarding the numbers of jobs from which he was disqualified. In adopting this rule, the majority essentially holds that, in order to prevail under the statute, ADA plaintiffs must prove, with quantitative certainty, that almost all jobs are outside their reach. The statute does not require this, nor do the opinions from the Supreme Court. This rigid formulation simply rewrites the statute—something we have no authority to do—and virtually ensures that very few plaintiffs will ever prevail under the ADA in this circuit.

## II. CONCLUSION

The jury's verdict in this case should stand. Under the very narrow standard of review that controls this court in this case, there is no basis upon which to take the case from the jury. The judgment of the District Court should be affirmed.

BEFORE: EDWARDS, Chief Judge; SILBERMAN, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS, TATEL and GARLAND, Circuit Judges.

## ORDER

March 31, 2000.

Per Curiam.

Upon consideration of appellee's petition for rehearing en banc, the response thereto, and the vote by a majority of the judges of the court in regular active service in favor of the petition, it is

ORDERED that the petition be granted. This case will be reheard by the court sitting en banc. The judgment filed on January 28, 2000 is hereby vacated. It is

FURTHER ORDERED that an order governing further proceedings will issue at a later date.