**Vincent BURNS and Icella Burns–
Burchell, Appellees,**

v.

**WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, Appellant.**

Nos. 96–7201, 96–7209.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 21, 1997.

Decided May 27, 1997.

Robert J. Kniaz, Deputy General Counsel, Washington, DC, argued the cause, for appel-

lant Washington Metropolitan Area Transit Authority, with whom Robert L. Polk, General Counsel, and Frederic H. Schuster, Associate General Counsel, were on the briefs.

Leonard P. Buscemi, Arlington, VA, argued the cause, and filed the brief, for appellant Terrance D'Souza.

Thomas C. Mugavero, Washington, DC, argued the cause, for appellees, with whom Mark Edward Futrovsky and Peter L. Scherr, Rockville, MD, were on the brief.

Before: EDWARDS, Chief Judge, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Per Curiam.

PER CURIAM.

Terrance D'Souza and WMATA appeal the magistrate judge's determination that D'Souza, the driver of a bus involved in a collision with a car driven by appellee, was negligent as a matter of law. WMATA also appeals the jury's verdict that appellee was not negligent. We reverse on both points and direct a new trial.

I.

At approximately 4:00 p.m. on February 26, 1993, Terrance D'Souza, the operator of a Washington Metropolitan Area Transit Authority (WMATA) bus, was heading north on Bladensburg Road in the District of Columbia in the left turn lane, and attempted to make a left hand turn onto Eastern Avenue. After D'Souza was approximately three-quarters of the way through his turn, a car operated by Vincent Burns, heading south on Bladensburg Road, struck D'Souza's bus near the right rear wheel.

D'Souza and his wife sued Burns for injuries and loss of consortium arising out of the accident. Burns and his wife, in turn, filed a third-party complaint against WMATA, which conceded that D'Souza was acting in the scope of his employment at the time of the accident. The parties consented to the assignment of the cases to a magistrate, who determined that they would be tried in the order in which they were filed. Since D'Sou-

za's case would be tried first, the magistrate allowed WMATA to participate in the questioning of witnesses during that case as necessary to protect its interests as third-party defendant.

At the end of D'Souza's affirmative case, Burns moved for a judgment that D'Souza was contributorily negligent as a matter of law, thus barring any recovery from Burns by D'Souza under District of Columbia law. *See, e.g., W.M. Schlosser Co., Inc. v. Maryland Drywall Co., Inc.*, 673 A.2d 647, 653 n. 13 (D.C.1996). Burns relied on D'Souza's testimony that, although he had an unobstructed view of oncoming traffic prior to beginning his turn, he claimed not to have seen Burns' vehicle. Burns thought that testimony established that D'Souza failed to see an approaching and immediate hazard (Burns' car), and that such failure to see constituted negligence as a matter of law. The magistrate agreed and granted Burns' motion.

The parties then turned to Burns' claim against WMATA. Because D'Souza had been found negligent as a matter of law and WMATA had conceded that D'Souza was acting in the scope of employment, the only remaining issues were whether Burns was contributorily negligent (which would bar recovery by Burns from WMATA) and, if he was not, the extent of any damages suffered by Burns and his wife. The magistrate put these questions to the jury, which returned a verdict finding that Burns was not contributorily negligent and awarding him and his wife $563,000 in damages.

## II.

■ WMATA[1] contends that the magistrate erred in holding that D'Souza was negligent as a matter of law for "failure to see" Burns' vehicle. Its essential argument is that substantial evidence showed that Burns' car was not visible to D'Souza at the time he commenced his turn, thus making the Dis-

trict of Columbia "failure to see" doctrine inapplicable. Under the doctrine, a driver must "fail[ ] to look effectively and see [a]n approaching automobile as an immediate hazard." *Singer v. Doyle*, 236 A.2d 436, 437 (D.C.1967); *see also Frager v. Pecot*, 327 A.2d 306, 307 (D.C.1974). The magistrate thought that this was conclusively decided by D'Souza's admission that he did not see Burns' car prior to beginning his turn,[2] in light of other testimony that Burns' car was visible just prior to the accident. Since D'Souza had "fail[ed] to look observantly and see what was there to be seen," he was negligent as a matter of law.

■ But in considering Burns' motion, the magistrate was required to view the evidence in the light most favorable to D'Souza, *see, e.g., Mackey v. United States*, 8 F.3d 826, 829 (D.C.Cir.1993), and she did not. Whereas D'Souza had testified that he could see "one to two hundred feet" down Bladensburg Road prior to making his turn, the magistrate placed him at the top end of that spectrum, stating that "[h]e testified ... that he could see at least 200 feet down the road." This difference is significant, for, as noted, WMATA argues that D'Souza could not have seen Burns' car at the point he began his turn. WMATA's argument clearly carries more weight if one assumes, as the trial court should have, that D'Souza could only see 100 feet (which does not seem unreasonable, given that the accident occurred late in a winter afternoon with a light snow falling).

Moreover, Burns testified that he was traveling between 25 and 35 miles per hour at the time of the accident. If D'Souza could see 200 feet up Bladensburg Road, he could see any vehicle traveling at 30 miles per hour (the middle of that range) that would cross through the intersection in approximately the next four-and-a-half seconds. But if he could only see 100 feet up the road, he could only see those vehicles that would cross through

1. Since their interests are aligned, references to WMATA as a party on appeal should be assumed to include D'Souza.

2. D'Souza's testimony on this score was not quite as clear as the magistrate made it out to be. Although he did confirm on cross-examination

that he did not see any southbound vehicles on Bladensburg Road just prior to beginning his turn, his testimony on direct, when asked if he saw any southbound traffic when he started his turn, was only that he "didn't see any *make it.*" (Emphasis added.)

the intersection in about the next two-and-a-quarter seconds. Other testimony indicated that D'Souza's 40 foot bus had completed three quarters of its turn (at least 30 feet), traveling at five to 15 miles per hour, which would take somewhere between a second-and-a-half and almost five. It is apparent, then, that Burns' vehicle may have come into view *during* D'Souza's turn. It is not our purpose to determine at exactly what point, if ever, Burns' vehicle came into D'Souza's view. Rather, we mean to emphasize that the evidence, viewed in a light favorable to WMATA, suggests that Burns' vehicle *may* have come into view only *after* the time D'Souza was well into his turn, at which point he would have been—and should have been—looking west on Eastern Avenue. In light of the time of day of the accident, the lack of visibility, the speed of Burns' driving, and the necessary time lapse between when D'Souza began his turn and when the accident took place, we think a jury quite reasonably could infer that D'Souza did not improperly "fail to see" Burns' approaching car.

◼◼◼ Even were we to accept the magistrate's conclusion that no reasonable jury could dispute that D'Souza negligently failed to see "what was there to be seen," we would question her implicit characterization of Burns' vehicle as an "immediate hazard." "An approaching vehicle is an 'immediate hazard' when it is so close to the intersection that, should it continue with undiminished speed and should the unfavored vehicle start, the two would reach the point where their paths would converge at approximately the

same time." *Singer*, 236 A.2d at 437 n. 2. As it happened, Burns' vehicle struck D'Souza's bus in the rear after it was well into its turn, so it is by no means clear that it was an *"immediate* hazard" at the time D'Souza began his turn. In any event, some testimony was to the effect that Burns *accelerated* and passed a car in front of him as he approached the intersection, rather than "continue[d] with undiminished speed." We do not, of course, resolve the differing recollections of the various witnesses; that is not our job, but, in ruling on a motion for judgment as a matter of law, neither is it the magistrate's.

### III.

◼◼◼ WMATA's second argument—independent of the first—is that the jury's determination that Burns was not contributorily negligent should be reversed because the magistrate's instruction regarding Burns' alleged speeding was in error.[3] During trial, WMATA elicited substantial, though not uncontradicted, testimony that Burns was traveling over the 25 mile per hour speed limit that governs Bladensburg Road at Eastern Avenue. One witness testified that Burns was traveling at an "excessive" speed "above" the legal limit. Another recalled that Burns was "coming at a fast pace." As noted above, Burns himself testified that he was traveling between 25 and 35 miles per hour (though in the same breath he claimed to be "within the speed limit"). At WMATA's request, the magistrate instructed the jury on the relevant traffic regulations,[4] but

---

3. WMATA also argues, rather convincingly, that *Burns* was the party who should be thought negligent as a matter of law. However, at oral argument, WMATA's counsel expressly stated that its argument was contingent on our upholding the magistrate's conclusion that D'Souza was negligent as a matter of law. We cannot conceive of any reason why WMATA would want to limit its argument so, but since we reverse the conclusion that D'Souza was negligent as a matter of law, we do not reach the question whether Burns was.

4. 18 D.C.M.R. Part 2200 (1995) states in relevant part:

2200.3: No person shall drive a vehicle on a street or highway at a speed greater than is reasonable and prudent under the conditions

and having regard to the actual and potential hazards then existing.

2200.4: In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the street ... in compliance with legal requirements and the duty of all persons to exercise due care.

2200.5: The driver of every vehicle shall, consistent with requirements of this section, drive at an appropriate reduced speed when approaching and crossing an intersection ... or by reason of weather....

In addition, we take judicial notice of 18 D.C.M.R. 2200.6, which provides that the legal speed limit in D.C. is 25 miles per hour unless otherwise posted. WMATA elicited testimony to this effect, though it did not introduce this partic-

she refused to instruct the jury that violation of those regulations constituted "negligence per se," instead opting to instruct that such violations were merely "evidence of negligence."

 In the District of Columbia, the "unexplained" violation of a traffic regulation "enacted ... to ... prevent the type of accident that occurred" constitutes negligence per se. *Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686, 692 (D.C.Cir.1987) (internal quotation marks omitted). At the time of her decision, the magistrate did not explain her refusal to give the negligence per se instruction. Later, denying WMATA's post-trial motions, she said only that the instructions "viewed as a whole ... fairly presented the applicable legal standards and principles," since "the only evidence of [speeding] came from Mr. Burns himself" and "there [wa]s ample evidence in the record that would support a finding that the defendant entered the intersection at a proper speed." It is simply not so that the "only evidence" of Burns' speeding came from Burns himself, but even if it were the denial of the negligence per se instruction would have been erroneous; surely, the jury was entitled to conclude Burns was speeding based solely on his testimony. And the trial court's statement to the effect that there was evidence in the record sufficient to support a finding that Burns was *not* speeding, while accurate, also strikes us as somewhat of a *non sequitur*. The negligence per se instruction is applied by the jury only if the jury determined Burns was in fact speeding; if it concluded he was not, the point would be moot.

 On appeal, Burns offers a (slightly) more plausible explanation for the magistrate's decision to instruct the jury that speeding, if found, constituted evidence of negligence and not negligence per se. Burns does not contest that D.C.'s speeding laws were enacted to prevent the sort of collision that occurred here, but he does claim that his speeding, if any, was explained. That is, he was traveling in Maryland, where he claims the speed limit is 30 miles per hour, before

he entered D.C., where the speed limit is 25. In the first place, this only "explains" the speeding if he was going less than 30, which is open to debate. More important, we do not think a driver's claimed ignorance of the law governing where he is driving excuses the violation of that law. To excuse his alleged speeding such that it would only amount to evidence of negligence and not negligence per se, Burns would have to show that he "did all a reasonable person who wished to comply with the law would do." *Leiken v. Wilson*, 445 A.2d 993, 1001 (D.C. 1982). He has not.

The jury should have been instructed that Burns' speeding, if proven, was negligence per se. We have no way of knowing what the jury actually decided with respect to Burns' speed, and so we cannot say that this error was harmless.

\*     \*     \*

The judgment below is reversed, and the case is remanded for a new trial.

ular regulation into evidence. *See Lyons v. Bar-* *razotto,* 667 A.2d 314, 324 (D.C.1995).