# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 10, 2011      Decided December 16, 2011

No. 11-1067

STEVEN ALTMAN,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

———

On Petition for Review of an Order of
the Securities & Exchange Commission

———

*Steven Altman*, appearing pro se, argued the cause and filed the briefs for petitioner.

*Christopher M. Bruckmann*, Senior Counsel, Securities and Exchange Commission, argued the cause for respondent. With him on the brief were *Mark D. Cahn*, General Counsel, Richard *M. Humes*, Associate General Counsel, *Melinda Hardy*, Assistant General Counsel, and *Donna S. McCaffrey*, Special Trial Counsel.

Before: SENTELLE, *Chief Judge*, HENDERSON and ROGERS, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This case is before the court on a petition to review the opinion and order of the Securities and Exchange Commission permanently denying Steven Altman, an attorney admitted to practice in New York State, the privilege of appearing or practicing before the Commission, pursuant to Rule 102(e)(1)(ii) of the Commission's Rules of Practice, and Section 4C of the Securities Exchange Act of 1934 ("the Act"). The Commission found that Altman, in appearing before it, violated three Disciplinary Rules of the New York Bar Association Lawyer's Code of Professional Responsibility, and that the violations were "egregious, recurrent, and reflected a high degree of scienter." *Steven Altman, Esq.*, Exchange Act Release No. 63306, 2010 SEC LEXIS 3762, at *70 (Nov. 10, 2010). Altman also petitions for review of the Commission's denial of his motion for reconsideration and a stay. *Steven Altman, Esq.*, Exchange Act Release No. 63665, 2011 SEC LEXIS 30 (Jan. 6, 2011).

Altman, now proceeding *pro se*, contends that the procedure employed by the Commission was unconstitutional, because (1) the Commission lacked authority to sanction him under Rule 102(e)(1)(ii) and Section 4C of the Act based on its determination of violations of the New York Bar disciplinary rules; (2) the Commission failed to provide notice that it could proceed against him in the absence of prior action by New York State and of the standard of conduct that could be found to violate Rule 102(e)(1)(ii) and Section 4C; and (3) the Commission's findings are not supported by substantial evidence. He also contends that the sanction was excessive. For the following reasons we deny the petition.

**I.**

Altman is a general commercial litigator who has rarely practiced before the Commission. In this instance, he

represented a client who had been subpoenaed by the Division of Enforcement in a proceeding against a company. Altman's client had previously been employed by another company but occasionally performed secretarial tasks for the company under investigation. At the time of the subpoena, the client (through Altman) was involved in negotiations with the client's prior employer about a severance package. The Division learned the client could testify that a key defense of the company being investigated was false. After the Division contacted Altman to request an interview with his client, Altman engaged in a series of telephone conversations with the company's attorney, Irving Einhorn, who, unbeknownst to Altman, tape recorded five of the six conversations. The transcripts show that Altman encouraged Einhorn to convince the company to facilitate the payment of a severance package to Altman's client and to remove the client's name as a co-signer of two car leases held by the company's CEO. Among the various exchanges, in the final taped conversation of February 10, 2004, Einhorn asked Altman: "What is the bottom line? What is it going to take? What kind of package is this? . . . What is the package that [the client] wants to, you know, not cooperate or whatever?" Altman responded: "Get [the client] off those leases and, you know, a year's salary . . . ." Einhorn then asked: "What will we get if they do that, [the client] won't cooperate or [the client] won't remember?" Altman responded: "Uh, probably both." SEC Off. of Gen. Counsel Ex. 18 at 1660.

On January 30, 2008, the Commission instituted proceedings against Altman for "engag[ing] in unethical or improper professional conduct" in violation of Rule 102(e)(1)(ii) and Section 4C of the Act. An administrative law judge found, after an evidentiary hearing at which Altman was represented by counsel, that Altman had violated three of the New York Bar

disciplinary rules,[1] and suspended him from appearing before the Commission for nine months. Altman appealed to the Commission; the Office of General Counsel appealed the nine-month suspension. The Commission, upon reviewing the transcripts of the taped conversations, the judge's findings, and Altman's defenses, affirmed the factual findings that he had knowingly violated three New York Bar disciplinary rules, but concluded a permanent bar better "serves the public interest and is remedial because it will protect the integrity of [the Commission's] prosecutorial and adjudicatory processes, and thereby the investing public, from future harm by Altman." *Altman*, 2010 SEC LEXIS, at *75. Upon the Commission's denial of his motion for reconsideration and a stay, Altman petitioned for review.

## II.

Altman's challenge to the Commission's authority to sanction him based on violations of the New York Bar disciplinary rules fails. Section 4C of the Act provides:

> The Commission may censure any person, or deny, temporarily or permanently, to any person the privilege of appearing or practicing before the Commission in any way, if that person is found by the Commission, after notice and opportunity for hearing

---

[1] The Commission found Altman had violated Rule 1-102(A)(4), prohibiting "conduct involving dishonesty, fraud, deceit, or misrepresentation"; Rule 1-102(A) (5), prohibiting "conduct that is prejudicial to the administration of justice"; and Rule 1-102(A)(7), prohibiting "conduct that adversely reflects on the lawyer's fitness as a lawyer." New York State Bar Association Lawyer's Code of Professional Responsibility Disciplinary Rules (herein "New York Bar disciplinary rules").

> in the matter . . . to be lacking in character or integrity, or to have engaged in unethical or improper professional conduct.

15 U.S.C. § 78d-3(a)(2). By its plain terms Section 4C authorizes the Commission to deny the privilege of appearance upon finding improper professional conduct. Because it does not unambiguously define "unethical or improper professional conduct," the question is whether the Commission's interpretation of the statute to allow it to apply State Bar disciplinary rules to define the proscribed conduct is permissible. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). "In reviewing an agency's interpretation of its authority under a statute it administers, the court will uphold that interpretation so long as it is a reasonable interpretation of the statute." *Financial Planning Ass'n v. SEC*, 482 F.3d 481, 487 (D.C. Cir. 2007) (citing *Village of Bergen v. FERC*, 33 F.3d 1385, 1389 (D.C. Cir. 1994)).

Rule 102(e)(1)(ii) of the Commission's Rules of Practice was codified as Section 4C of the Act as part of the Sarbanes-Oxley Act of 2002, Pub. L. 107-204, 116 Stat. 745 (2002) (codified as 15 U.S.C. § 78d-3(a)(2)). Prior to its codification the Commission stated that it "perceives no unfairness whatsoever in holding those professionals who practice before [the Commission] to generally recognized norms of professional conduct . . . whether or not such norms had previously been explicitly adopted or endorsed by the Commission. To do so upsets no justifiable expectations, since the professional is already subject to those norms." *Carter and Johnson*, 47 S.E.C. 471, 508 & n.65 (Feb. 28, 1981) (referencing the American Bar Association ("ABA") Code of Professional Responsibility Disciplinary Rules). The text of Section 4C is virtually

identical to Rule 102(e)(1)(ii).[2] "It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274–75 (1974)). In *In re Snyder*, 472 U.S. 634, 645 & n.6 (1985), the Supreme Court held that a federal court could charge an attorney appearing before it "with the knowledge of and the duty to conform to the state code of professional responsibility" and thus the court was "entitled to rely on the attorney's knowledge of the state code of professional conduct applicable in that state court . . . ." Similarly, the Commission was entitled to rely on Altman's knowledge of and duty to conform to the New York Bar disciplinary rules. *See Herman v. Dulles*, 205 F.2d 715, 716 (D.C. Cir. 1953).

Contrary to Altman's position, the Commission did not lack

---

[2] Rule 102(e)(1)(ii) provides, with Section 4C's codification changes shown within brackets:

> (1) Generally. [Authority to Censure] The Commission may censure a [any] person[,] or deny, temporarily or permanently, [to any person] the privilege of appearing or practicing before it [the Commission] in any way to any person who [if that person] is found by the Commission[,] after notice and opportunity for hearing in the matter:
> . . .

> (ii) To be lacking in character or integrity[,] or to have engaged in unethical or improper professional conduct[.]

*Compare* 17 C.F.R. § 201.102(e)(1), *with* 15 U.S.C. § 78d-3(a)(2).

authority to act because of previous pronouncements that it would generally not do so without prior judicial or administrative findings of misconduct. Altman points to the Commission's statements of its general policy.[3] Nothing in these statements suggested the Commission would not act in the appropriate circumstances. To the extent the Commission has for "nearly 20-year[s] stay[ed] [] its hand on attorney discipline," Petr.'s Br. 18, the Commission's "powers . . . are not lost by being allowed to lie dormant." *United States v. Morton Salt Co.*, 338 U.S. 632, 647 (1950).

Neither, as Altman contends, does the Commission's exercise of authority absent prior disciplinary proceedings against him by New York State implicate separation of powers or federalism concerns. The sanction imposed on Altman is limited to appearances before the Commission and has no effect either on his ability to practice law in New York State and to appear before any court, or on New York State's authority to

---

[3] "[T]he Commission generally should not institute Rule 102(e) proceedings against attorneys absent a judicial determination that the lawyer has violated the federal securities laws." *Implementation of Standards of Professional Conduct for Attorneys [under Section 307 of the Sarbanes-Oxley Act regarding issuers]*, 67 Fed. Reg. 71,670, 71,672 (proposed Dec. 2, 2002); "[T]he Commission has generally utilized Rule 2(e) proceedings against attorneys only where the attorney's conduct has already provided the basis for a judicial or administrative order finding a securities law violation in a non-Rule 2(e) proceeding." *Disciplinary Proceedings Involving Professionals Appearing or Practicing Before the Commission*, Securities Act Release No. 33-6783, 41 SEC Docket 388, 394–95; 1988 SEC LEXIS 1365, at *22 (July 7, 1988). Rule 2(e), promulgated in 1935, was redesignated as Rule 102(e) in 1995; the text of subpart (1)(ii) did not change. *See Implementation of Standards of Professional Conduct for Attorneys*, 67 Fed. Reg. at 71,671 n.11.

discipline him. *Cf. United States v. Cutler*, 58 F.3d 825, 838 (2d Cir. 1995). And Altman's contentions that the Commission could have taken a more limited approach under Rule 180 of its Rules of Practice, that New York State follows a different, and likely more comprehensive, disciplinary process, and that the U.S. Patent and Trademark Office has a more robust disciplinary process are not relevant to the question whether the Commission acted within its authority in sanctioning him.

## III.

Altman's contention that he lacked sufficient notice of either the possibility of Commission administrative proceedings absent prior disciplinary action by New York State or of the standards of conduct subject to discipline under Rule 102(e)(1)(ii) and Section 4C of the Act also fails. The court will uphold the Commission's legal conclusions unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Graham v. SEC*, 222 F.3d 994, 999–1000 (D.C. Cir. 2000); *Wonsover v. SEC*, 205 F.3d 408, 412 (D.C. Cir. 2000).

In *Marrie v. SEC*, 374 F.3d 1196, 1205 (D.C. Cir. 2004), this court stated, in a case involving the discipline of an accountant pursuant to Rule 102(e)(1), that "[i]t cannot be gainsaid that the Commission could reasonably conclude that any licensed accountant is on notice of professional standards generally and of what constitutes extreme departures in particular." The same principle applies here. The Commission has previously relied on external codes of professional conduct, including the ABA Canons of Professional Ethics, as a basis for disciplining attorneys under its rules. *See Kivitz*, 44 S.E.C. 600, 607–08 (June 29, 1971), *reversed on other grounds*, *Kivitz v. SEC*, 475 F.2d 956 (D.C. Cir. 1973). It announced in 1981, in *Carter and Johnson*, 47 S.E.C. at 508, that generally recognized

norms could provide the basis for discipline under Rule 102(e)(1)(ii) (then Rule 2(e)(1)(ii), *see supra* note 3). And in 2002, in considering standards for issuers under Section 307 of the Sarbanes-Oxley Act, the Commission noted:

> Rule 102(e) does not establish professional standards. Rather, the rule enables the Commission to discipline professionals who have engaged in improper professional conduct by failing to satisfy the rules, regulations or standards to which they are already subject, including state ethical rules governing attorney conduct . . . .

*Implementation of Standards of Professional Conduct for Attorneys, supra* note 3, 67 Fed. Reg. at 71,671 n.13.

Altman was on notice of his duty to comply with the New York Bar disciplinary rules, and when appearing before the Commission, he could be held to that duty. *Cf. In re Snyder*, 472 U.S. at 645 & n.6. He cannot seriously suggest that he lacked notice that conduct in the nature of a fraud on Commission proceedings falls within the purview of Rule 102(e), the purpose of which is to "protect[] the integrity of the Commission's own processes . . . ." *Marrie*, 374 F.3d at 1200.

Likewise, Altman's contention that he lacked notice of the standard of conduct proscribed by Rule 102(e)(1)(ii) and Section 4C of the Act is unpersuasive. Although the court has sustained challenges to the Commission's imposition of Rule 102(e)(1) sanctions based on inadequate notice of the applicable standard, *see Marrie*, 374 F.3d 1196; *Checkosky v. SEC*, 139 F.3d 221 (D.C. Cir. 1998); *Checkosky v. SEC*, 23 F.3d 452 (D.C. Cir. 1994), those cases, on which Altman relies, concerned the failure to provide standards or notice as to the possibility that negligent or reckless conduct could fall within

Rule 102(e)'s ambit. *See Marrie*, 374 F.3d at 1202. The Commission found Altman had engaged in "egregious" intentional improper professional conduct, *Altman,*, 2010 SEC LEXIS, at *70, specifically that he was seeking a severance package for his client in exchange for untruthful testimony in Commission proceedings or evasion of its process by his client.[4] Whatever ambiguity may exist as to lesser mental states that might implicate Rule 102(e), intentional improper conduct in the nature of "extreme departures," *Marrie*, 374 F.3d at 1205, such as Altman's sanctioned conduct, falls within the rule's ambit. Altman thus was on notice that based on the New York Bar disciplinary rules the Commission could proceed against him under Rule 102(e)(1)(ii) and Section 4C of the Act to protect the integrity of its processes.

## IV.

The Commission's factual determinations are conclusive "if they are supported by substantial evidence" in the record. *Horning v. SEC*, 570 F.3d 337, 343 (D.C. Cir. 2009); 15 U.S.C. § 78y(a)(4). Altman, however, has forfeited his challenges to the tapes evidence upon which the Commission relied. He identified these challenges only in introductory sections of his opening brief, *see* Petr's. Br. at xiii, 6, but provided no argument or citations, *see Anna Jaques Hosp. v. Sebelius*, 583 F.3d 1, 7 (D.C. Cir. 2009), and did not present his argument until his reply brief, *see* Petr's. Reply Br. at 5–9. *See United States v. Moore*, 651 F.3d 30, 50 n.4 (D.C. Cir. 2011); *American*

---

[4] Altman's challenge to the Commission's source of law for its *scienter* finding fails. Regardless of whether the administrative law judge relied on Black's Law Dictionary in finding Altman's conduct to be intentional, the Commission relied on published case law from New York State where he is licensed to practice law. *See Altman*, 2010 SEC LEXIS, at *44-*50.

*Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008); FED. R. APP. P. 28(a)(9)(A). The court "generally will not entertain arguments omitted from an appellant's opening brief and raised initially in his reply brief." *McBride v. Merrell Dow and Pharmaceuticals, Inc.*, 800 F.2d 1208, 1210 (D.C. Cir. 1986) (citing, *inter alia*, *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983)); *see Rollins Envtl. Servs. Inc. v. EPA*, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991). In any event, the entirety of the stipulated transcript of the tape recordings provides substantial evidence for the Commission's finding that Altman engaged in intentional improper professional conduct.[5]

## V.

Finally, Altman contends the sanction was excessive in view of his otherwise unblemished disciplinary record, mitigating personal factors, and his subsequent significant community service. Again he has presented his arguments only in his reply brief and forfeited them. *See Rollins*, 937 F.2d at 652 n.2. In any event, the court will not "disturb the Commission's choice of sanction unless it is either unwarranted in law or without justification in fact." *Horning*, 570 F.3d at 343 (internal quotation marks, ellipsis, and citation omitted); *see WHX Corp. v. SEC*, 362 F.3d 854, 859 (D.C. Cir. 2004).

The Commission's factual findings are supported by

---

[5] Altman's suggestion at oral argument that the transcript of the tape recordings contain errors comes too late. Oral Arg. at 3:44-7:20. He concedes that he did not provide the court with a "corrected" transcript, *id.* at 4:27, and that, in the proceedings before the Commission, he stipulated, through counsel, to the majority of the transcript, *id.* at 23:10-23:57. Moreover, counsel for the Commission stated that the differences between the Commission's version and Altman's version of the transcripts are immaterial. *Id.* at 17:50-18:48.

substantial evidence in the record and its choice of sanction was statutorily authorized under Section 4C of the Act. The Commission applied the public interest standards set forth in *Steadman v. SEC*, 603 F.2d 1126, 1140 (5th Cir. 1979), *see Kornman v. SEC*, 592 F.3d 173, 187–88 (D.C. Cir. 2010), and it was unpersuaded that circumstances in mitigation identified by Altman in his Reply Brief warranted a lesser sanction. To the extent Altman would reprise arguments in mitigation that he presented to the Commission, he has not provided grounds for the court to conclude the Commission abused its discretion. *See Wonsover*, 205 F.3d at 413 (quoting *Svalberg v. SEC*, 876 F.2d 181, 185 (D.C. Cir. 1989)); *see also Kornman*, 592 F.3d at 187–88. To the extent he raises new arguments, it is unclear how his subsequent community service demonstrates an abuse of discretion by the Commission, much less how claimed reputational damage would be undone by a lesser sanction given the nature of the improper professional conduct found by the Commission.

Accordingly, the petition for review is denied.