# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 18, 2012          Decided July 5, 2013

No. 11-7158

MARGARETTA SIBERT-DEAN,
APPELLEE

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-02145)

*Gerard J. Stief* argued the cause for appellant. With him on the briefs were *Carol B. O'Keeffe* and *Mark F. Sullivan*.

*Jacob M. Lebowitz* argued the cause for appellee. With him on the brief was *Peter C. Grenier*.

Before: GARLAND, *Chief Judge*, and TATEL and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: Margaretta Sibert-Dean was injured when the Washington Metropolitan Area Transit Authority (WMATA) bus on which she was riding struck a car.

Evidence at trial showed that the bus hit the car because the driver was distracted by the attentions of a group of teenage girls.  On appeal, WMATA insists that the district court erred in instructing the jury that it must treat the driver's violations of two District of Columbia traffic regulations as negligence per se, rather than as evidence of negligence.  Because that distinction is without a material difference in this case, we affirm the judgment of the district court.

I

On February 14, 2006, Sibert-Dean was riding a WMATA bus in Northwest Washington, D.C.  As it pulled away from a stop, the bus collided with a car that was making a turn in front of it.  Sibert-Dean was thrown from her seat and injured.  In her complaint, she alleged that the accident was the result of the driver's failure to pay attention to the road as he pulled away from the bus stop.

At trial, Sibert-Dean presented evidence that the bus driver, Dante Dinkins, failed to see that a car was turning in front of him because he was distracted by a group of teenage girls who were near the bus stop.  Patricia Shelton, another bus passenger, testified that the teens had been "[l]aughing, talking, . . . horse playing and carrying on."  9/22/11 (am) Tr. 13.  She said that the girls started "hollering at the driver," "laughing," and "[a]cting flirty" with him.  *Id.* at 13-14, 18.  Dinkins turned around and looked back at them, smiling, and then continued to watch them "jumping up and down" as he pulled the bus away from the stop.  *Id.* at 13, 17-18.

Sibert-Dean testified that she and other passengers, seeing that a car was turning in front of the bus as the bus pulled into traffic, screamed at Dinkins in an effort to forestall the impending collision.  Dinkins attempted a defensive driving

maneuver, at which point Sibert-Dean was ejected from her seat and into a steel handrail, which knocked her unconscious.  The bus and the car then collided.  Sibert-Dean was taken directly to the hospital, where she was treated for a variety of injuries.

Before the jury was instructed, the parties and the court spent a significant amount of time discussing how the jury should be told to treat a number of District of Columbia traffic regulations.  These included 18 D.C.M.R. § 2206.1 and 18 D.C.M.R. § 2213.4.  The first states that "[n]o person shall start a vehicle which is stopped, standing, or parked unless and until the movement can be made with reasonable safety."  The second states that "[a]n operator shall, when operating a vehicle, give full time and attention to the operation of the vehicle."  The question at issue was whether to tell the jury that a violation of one or more of the relevant traffic regulations constituted negligence per se, or only evidence of negligence.  After some debate and consideration of District of Columbia case law, the court decided to give a negligence per se instruction.  9/28/11 (pm) Tr. 13.

In its instructions to the jury, the court explained that WMATA had a duty to use ordinary care in carrying passengers, and that this meant its bus driver had a duty to act as a reasonable person would under the circumstances.  If the driver failed to live up to that duty, the driver was negligent and WMATA was liable.  *Id.* at 36.  The court also read the text of several D.C. traffic regulations, including sections 2206.1 and 2213.4, and said that, if the jury found that its bus driver violated any of them, it must find WMATA negligent.  *Id.* at 37.  The court went on to explain that, if the jury found WMATA negligent, it must then decide whether that negligence was a proximate cause of Sibert-Dean's injuries.  *Id.* at 40.  The jury

returned a verdict in Sibert-Dean's favor, requiring WMATA to pay $337,500 in damages. Order of Judgment 2 (Dec. 4, 2011).[1]

In its motion for a new trial, WMATA argued that the district court should have instructed the jury to consider violations of sections 2206.1 and 2213.4 only as evidence of negligence, not as negligence per se. The court disagreed. *Sibert-Dean v. WMATA*, 826 F. Supp. 2d 266, 268 (D.D.C. 2011). It held that the regulations in question were sufficiently specific to warrant a negligence per se instruction. It further held that, even if it had erred in giving a negligence per se rather than an evidence-of-negligence instruction, the error was harmless. It noted that the jury was presented with "significant evidence" supporting a finding that WMATA's bus driver was negligent, and that in light of this evidence, the jury "most likely would have reached the same verdict" even if it had been instructed to treat violations of sections 2206.1 and 2213.4 as evidence of negligence. *Id.* at 278. After denying WMATA's motion for a new trial, the district court entered judgment against WMATA. Order of Judgment 2 (Dec. 4, 2011).

II

Under District of Columbia law, the default rule for the application of the negligence per se doctrine is as follows: "[W]here a particular statutory or regulatory standard is enacted to . . . prevent the type of accident that occurred[,] . . . [an] unexplained violation of that standard renders the defendant negligent as a matter of law." *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 557 (D.C. Cir. 1993) (quoting *Ceco Corp. v.*

---

[1]WMATA had filed a third-party complaint against Norma Jean Woodson, the driver of the other vehicle. The jury found that both WMATA and Woodson were negligent, and that the negligence of each was a cause of the accident. Order of Judgment 1 (Dec. 4, 2011).

*Coleman*, 441 A.2d 940, 945 (D.C. 1982)) (emphasis removed); *see Burns v. WMATA*, 114 F.3d 219, 223 (D.C. Cir. 1997); *Childs v. Purll*, 882 A.2d 227, 235 (D.C. 2005).

WMATA does not dispute that the general conditions for the default rule were met here.[2] Instead, it relies on an exception to that rule. Under that exception, "a statute or regulation offered to establish a standard for negligence *per se* purposes must not merely repeat the common law duty of reasonable care, but must set forth 'specific guidelines to govern behavior.'" *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 579 (D.C. 1996) (quoting *Bell Helicopter*, 999 F.2d at 558). WMATA argues that the exception applies here because sections 2206.1 and 2213.4 are "very general regulations which merely restate[] common law standards." WMATA Br. 25.

---

[2]In its reply brief, WMATA suggested that the "sudden emergency" of a car pulling in front of the bus provided an exculpatory explanation for Dinkins' alleged violations of the regulations in question. Reply Br. 11; *see Ceco Corp.*, 441 A.2d at 945 ("If a party charged with statutory or regulatory negligence produces competent evidence tending to explain or excuse his or her violation of the statutory or regulatory standard, the jury is properly instructed . . . that the violation is evidence of negligence, but not negligence as a matter of law."). The brief left unexplained, however, why another driver's decision to suddenly pull in front of the bus would excuse the bus driver's failure to pay full attention to the operation of his vehicle, which would violate 18 D.C.M.R. § 2213.4. As for 18 D.C.M.R. § 2206.1, we do not see why the suddenness of the other driver's behavior would excuse Dinkins' decision to leave the bus stop if, at the time he started the bus, it was unreasonably unsafe to do so. In any event, these arguments are not properly before us because WMATA did not raise them until its reply brief. *Altman v. SEC*, 666 F.3d 1322, 1329 (D.C. Cir. 2011); *Novak v. Capital Mgmt. & Dev. Corp.*, 570 F.3d 305, 311 n.3 (D.C. Cir. 2009).

We review an alleged failure to submit a proper jury instruction *de novo*. *Czekalski v. LaHood*, 589 F.3d 449, 453 (D.C. Cir. 2009). But we also apply the harmless error rule, pursuant to which "the court must disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61; *see Czekalski*, 589 F.3d at 453. This "means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 168 (D.C. Cir. 2007) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). We first address WMATA's argument that the district court erred, and then turn to its argument that the alleged error was not harmless.[3]

## A

Section 2213.4 requires that "[a]n operator shall, when operating a vehicle, give full time and attention to the operation of the vehicle." 18 D.C.M.R. § 2213.4. WMATA asserts that this "simply is another way of saying that the bus operator must exercise 'due care.'" WMATA Br. 22 (quoting *Bell Helicopter*, 999 F.2d at 558) (internal alteration omitted). Thus, in its view, a negligence per se instruction is inappropriate in light of the exception for statutes that merely restate common law standards.

---

[3]Sibert-Dean contends that we should review only for plain error because WMATA failed to state distinctly the grounds for its objection before the jury was instructed, and because it invited any error by originally proposing negligence per se instructions and then "wait[ing] until the last minute to change its mind and object." Sibert-Dean Br. 16; *see* FED. R. CIV. P. 51(b), (c), (d)(2); *Long v. Howard Univ.*, 550 F.3d 21, 25 (D.C. Cir. 2008); *United States v. Kanu*, 695 F.3d 74, 80 (D.C. Cir. 2012). We need not address that contention because we affirm even under the harmless error standard, which is more favorable to WMATA. *See Muldrow*, 493 F.3d at 168.

On its face, section 2213.4 does not merely restate the basic common law duty of reasonable care. As the district court explained, it requires drivers not only to give "reasonable" or "due" time and attention to the operation of their vehicles, but to give their "full" time and attention. *See Sibert-Dean*, 826 F. Supp. 2d at 275. It is true that the presence of terms like "reasonable" or "due" is not required for the exception to the negligence per se rule to apply. The key question is not whether the regulation contains certain words or phrases, but whether it "allow[s a factfinder] to determine whether [it] has been violated without resorting to a common law reasonable care analysis." *Chadbourne v. Kappaz*, 779 A.2d 293, 297 (D.C. 2001); *see id.* 296-97. In *Chadbourne*, the court found the exception applicable to a law stating that "[n]o owner of an animal shall allow the animal to go at large," because the phrase "allow the animal to go at large" implied either intentionally letting an animal run free *or* negligently failing to prevent it from doing so. *Id.*

But we do not think that section 2213.4 directs such an implicit common law reasonable care analysis. It is one thing to ask whether a driver has given reasonable attention to the task at hand. It is quite another to ask whether a driver has given *full* attention to his task. One can readily imagine a driver meeting the former standard but not the latter, and it is the latter that the regulation imposes. We therefore conclude that the district court did not err in giving a negligence per se instruction with respect to 18 D.C.M.R. § 2213.4.

The second regulation at issue, section 2206.1, is a different matter. This regulation states that "[n]o person shall start a vehicle which is stopped, standing, or parked unless and until the movement can be made with reasonable safety." 18 D.C.M.R. § 2206.1. Here the term "reasonable" *is* present. The important point is not just the presence of the word, however,

but how it affects the operation of the regulation as a practical matter. It is not possible to tell whether a person has violated the standard set by this regulation without evaluating his or her actions against a common sense (and common law) baseline of reasonable behavior. The regulation does not forbid starting a vehicle unless it is fully safe to do so. It forbids starting a vehicle unless it is *reasonably* safe to do so. In that respect, section 2206.1 closely resembles the aircraft regulations in *Bell Helicopter*. There the court, applying District of Columbia law, found that a negligence per se instruction was inappropriate with respect to regulations forbidding "careless or reckless" piloting, or flying at an altitude too low to allow emergency landing without "undue hazard." 999 F.2d at 558-59.

Sibert-Dean maintains that section 2206.1 sets forth a specific standard of conduct because it applies to a very particular set of circumstances (namely, starting a vehicle). But so did the altitude regulation in *Bell Helicopter* and the leash law in *Chadbourne*. The question is not whether the regulation deals with a specific set of circumstances, but what sort of behavior it prescribes for the circumstances that it governs. If the regulation provides specific directions that go beyond a mere admonition of reasonable care, the negligence per se instruction should be given. *Cf. Burns*, 114 F.3d at 223 (holding that the jury should have been instructed that exceeding the 25 mile per hour speed limit, if proven, constituted negligence per se). But if the regulation does not provide specific directions for what to do in the circumstances, so that determining whether a person has violated the regulation boils down to a common law reasonableness inquiry, a negligence per se instruction is unwarranted. *See Thoma v. Kettler Bros.*, 632 A.2d 725, 728 n.8 (D.C. 1993) (holding that a negligence per se instruction would have been improper because the regulations at issue did "not differ significantly in their particulars from the common law standard of reasonable care in the circumstances"). Because

section 2206.1 says nothing more than that the usual common law rule applies, it was error to give a negligence per se instruction.[4]

B

The error with respect to the section 2206.1 instruction warrants reversal only if it was not harmless; that is, only if it "affected the outcome of the district court proceedings." *Muldrow*, 493 F.3d at 168 (quoting *Olano*, 507 U.S. at 734). The question before us, then, is whether giving a negligence per se instruction with respect to section 2206.1 affected the outcome of the trial.

WMATA argues that "the prejudice created by giving the negligence per se instruction" in this case "is clear." WMATA Br. 25. As WMATA puts it, "[t]he improper negligence per se instruction mandated that the jury find WMATA negligent if the jury determined that . . . very general regulations *which merely restated common law standards*" were violated. *Id.* (emphasis added). Unfortunately for WMATA, the very structure of its argument traps it between Scylla and Charybdis. In order to

---

[4]In parts of her brief, Sibert-Dean appears to argue that the exception to the negligence per se rule for regulations that merely repeat the common law duty of care should never apply to automobile traffic regulations. *See, e.g.*, Sibert-Dean Br. 21-22. In support, she notes that no District of Columbia case has ever applied the exception in that context. She concedes, however, that no District of Columbia case has ever held that the exception is inapplicable to automobile traffic regulations. Oral Arg. Recording at 18:50-19:10. More important, this court has itself applied the exception to regulations governing the operation of another kind of vehicle (a helicopter). *See Bell Helicopter*, 999 F.2d at 557-59. And Sibert-Dean proffers no reason why it should be inapplicable to vehicles that cannot leave the ground.

prevail, WMATA must show both that there was error and that the error was not harmless.  Yet, if its argument for error is sound, it appears certain that the error was harmless.

The premise of WMATA's argument for error is that section 2206.1 "merely restate[s]" the common law standard itself.  Reply Br. 8; *see id.* at 6 (arguing that "the challenged regulations . . . only reiterate the common law duty of reasonable care").  Indeed, the reason that many jurisdictions decline to apply the doctrine of negligence per se to statutes that simply duplicate the common law duty is that in such circumstances the negligence per se rule is a needless analytic fifth wheel.  As the Restatement explains:

> To find that an actor has violated such a statute, the jury would also need to find that the actor has behaved negligently.  In such situations, the doctrine of negligence per se is largely superfluous in ascertaining the actor's liability.  In cases of this sort, courts . . . frequently . . . reject negligence per se, recognizing its redundancy and appreciating that it does not serve its typical function of simplifying or providing structure to the rendering of negligence determinations.

RESTATEMENT (THIRD) OF TORTS: LIAB. FOR PHYSICAL AND EMOTIONAL HARM § 14 cmt. e (2010).

But if the negligence per se instruction was erroneous only because it was redundant, then the error cannot be prejudicial.  If the regulation merely restated the common law duty of due care, a factfinder following the court's instruction could not have found that WMATA violated the regulation without also concluding that it violated that common law duty.  *See Chadbourne*, 779 A.2d at 297.  And if the jury made the latter

finding as required, the erroneous jury instruction could not have affected the outcome of the case.

Because giving a negligence per se instruction with respect to a statute or regulation that merely restates the common law standard is redundant rather than harmful, it is unsurprising that WMATA cannot cite a single case in which any court in the District of Columbia has reversed a trial court for erroneously doing so. Oral Arg. Recording, 5:06-7:00; 25:28-25:38 (acknowledgment by WMATA counsel). This case will not be the first.[5]

## III

For the foregoing reasons, the judgment of the district court is

*Affirmed*.

---

[5]There may be circumstances in which giving a negligence per se instruction is harmful, not because of the instruction itself, but because of the ways in which negligence per se interacts with other tort doctrines. WMATA argues, for example, that statutory negligence per se can sometimes limit the availability of defenses like contributory negligence. WMATA Reply Br. 12-13. No such interactions have been suggested in this case.